UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

SUZANNE W. KLEINKNECHT AS PERSONAL
REPRESENTATIVE OF RICHARD P.
KLEINKNECHT, Deceased, and SUZANNE W.
KLEINKNECHT,

                             Plaintiffs,

    -against-

JONATHAN PHILIP RITTER, AS PERSONAL
REPRESENTATIVE OF JOHN RITTER, Deceased,
JAMES SIINO, GARY KALBAUGH, GREGORY
LINAKIS, DAVID WENTER,CHRISTOPHER
CAGNAZZI, JACK MULDERRIG, AMELIA
BROGAN, MICHAEL KOLODNER, THE
INCORPORATED VILLAGE OF LLOYD HARBOR,
THE ZONING BOARD OF APPEALS FOR THE
INCORPORATED VILLAGE OF LLOYD HARBOR,
and THE PLANNING BOARD OF THE
INCORPORATED VILLAGE OF LLOYD HARBOR,

                             Defendants.

-------------------------------------------------------------------X

FILED
CLERK
4:13 pm, Mar 01, 2024
U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM & ORDER**
CV 19-5760 (GRB)(LGD)

**GARY R. BROWN, United States District Judge:**

Presently before the Court is defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. Docket Entry ("DE") 90. For the reasons stated below, that motion is DENIED WITHOUT PREJUDICE.

**Background**

This case concerns a land-use dispute between plaintiffs, Suzanne Kleinknecht in her personal capacity and as representative of her late husband Richard Kleinknecht, and defendants, the Village of Lloyd Harbor ("the Village"), the Village Planning Board, the Village Zoning Board of Appeals, and various individual defendants, including former Village Attorney John

1

Ritter, Village Building Inspector James Siino, and members of the aforementioned boards. The dispute centers on three permit denials for construction of a dock on plaintiffs' waterfront property.

Plaintiffs purchased a home in the Village in 1999. Plaintiffs' Counterstatement of Material Facts, DE 97-1 ¶ 6. At that time, the property was subject to a complex web of covenants, restrictions, and indentures, the legal impact of which the parties dispute to this day. *See generally id.* ¶¶ 8-20. For present purposes, the conflict can be summarized succinctly: plaintiffs were aware of an easement on the property that, according to their purchase deed, forbade the creation of "new docks, piers, paving, bulkheads or construction of any sort…along [the] shorefront area." DE 95-1 at 3. Citing the easement, the Village Planning Board denied plaintiffs' first application to construct a floating dock on their property in 2011. DE 95 ¶¶ 35, 36, 42. The easement was found invalid at an Article 78 proceeding in 2012, and the Planning Board was directed to issue a building permit "upon the filing of an appropriate application." *Id.* ¶ 51. Despite this ruling, the Planning Board asserted the easement was still in effect and denied plaintiffs' subsequent permit applications, leading to additional litigation in state court. *See id.* ¶¶ 73-80.

In 2019, plaintiffs submitted another permit application and filed this lawsuit in federal court, alleging that the repeated denials of their building permits constituted a regulatory taking in violation of the Fifth Amendment, giving rise to a claim under 42 U.S.C. § 1983. *See generally* Complaint, DE 15. Shortly thereafter, the Planning Board granted plaintiffs' building permit, and plaintiffs began construction in 2020. DE 97-1 ¶¶ 89-93. However, the instant case persisted, now focused on damages for the nine-year period between 2011 and 2020 during which plaintiffs were prohibited from constructing their dock. DE 97 at 8-9. On January 24,

2024, defendants moved for summary judgment, DE 90, and submitted a supporting memorandum. DE 93. Plaintiffs submitted a memorandum in opposition to the motion, DE 97, and defendants filed a reply in further support. DE 99. Plaintiffs, who have until recently been unable to conduct discovery in this case, requested to defer resolution of the motion pursuant to Fed. R. Civ. P. 56(d) and attached an affidavit explaining what additional facts they seek in discovery. *See* DE 94.

**Discussion**

*Standard of Review*

This motion for summary judgment is decided under the oft-repeated and well understood standard for review of such matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211 (E.D.N.Y. 2015), *aff'd sub nom. Bartels v. Schwarz*, 643 Fed. App'x. 54 (2d Cir. 2016), which discussion is incorporated by reference herein.

*Mootness*

Defendants initially contend that plaintiffs' takings claim became moot in 2020, when plaintiffs were ultimately permitted to construct their dock. This argument has been explicitly rejected by the Supreme Court, which has held that "as soon as private property has been taken, whether through formal condemnation proceedings, occupancy, physical invasion, or regulation, the landowner has *already* suffered a constitutional violation" entitling the owner to a remedy. *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2172, 204 L. Ed. 2d 558 (2019) (internal quotations omitted). Merely ceasing the conduct creating the taking, "though converting the taking into a temporary one, is not a sufficient remedy to meet the demands of the Just Compensation Clause." *First Eng. Evangelical Lutheran Church of Glendale v. Los Angeles Cnty., Cal.*, 482 U.S. 304, 319 (1987). "[W]here the government's activities *have already*

*worked a taking*…of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective." *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Plan. Agency*, 535 U.S. 302, 328 (2002) (quoting *First Eng.*, 482 U.S. at 321).

Here, there is no dispute that the Village Planning Board repeatedly denied plaintiffs' building permits, preventing plaintiffs from constructing a dock between 2011 and 2020. Regardless of whether plaintiffs can ultimately prove these denials rose to the level of a taking, plaintiffs have standing to assert a claim for damages for that nine-year period. Therefore, their takings claim is not rendered moot simply because the dock has since been constructed.

*Statute of Limitations*

Defendants next assert that plaintiffs' takings claim is time-barred. Section 1983 claims are subject to a three-year statute of limitations in New York. *See Hogan v. Fischer,* 738 F.3d 509, 517 (2d Cir. 2013). Since plaintiffs' takings claim accrued when the Village first denied their permit application in 2011, the claim initially appears untimely. However, plaintiffs argue that equitable tolling should apply. The Court agrees.

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Watson v. United States*, 865 F.3d 123, 132 (2d Cir. 2017) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). "The term 'extraordinary' refers…to the severity of the obstacle impeding compliance with a limitations period." *Harper v. Ercole*, 648 F.3d 132, 137 (2d Cir. 2011).

Prior to 2019, Supreme Court precedent held that, "if a State provides an adequate procedure for seeking just compensation, the property owner cannot claim a violation of the Just

4

Compensation Clause until it has used the procedure and been denied just compensation." *Williamson Cnty. Reg'l Plan. Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 195 (1985).  Essentially, this required a property owner to exhaust state court remedies before bringing a takings claim in federal court under § 1983.  *See Kurtz v. Verizon New York, Inc.*, 758 F.3d 506, 512 (2d Cir. 2014).  In *Knick v. Twp. of Scott, Pennsylvania*, 139 S. Ct. 2162, 2170, 204 L. Ed. 2d 558 (2019), the Supreme Court overruled this portion of *Williamson Cnty.*, stating that "a property owner has a claim for a violation of the Takings Clause as soon as a government takes his property for public use without paying for it."

This Court joins others in this circuit "in concluding that the Supreme Court's decision in *Williamson County*, which prohibited Plaintiff[s] from filing [their] takings claim in federal court prior to the Supreme Court's decision in *Knick*, represents an extraordinary circumstance." *Billeris v. Inc. Vill. of Bayville, New York*, No. 20-CV-03298 (HG)(ST), 2023 WL 6214108, at *7 (E.D.N.Y. Sept. 25, 2023); *see also Stensrud v. Rochester Genesee Reg'l Transportation Auth.*, 507 F. Supp. 3d 444, 454 (W.D.N.Y. 2020) (reaching same conclusion).  Before *Knick* was decided, any takings claim plaintiffs attempted to file in this Court would have been promptly dismissed; it is only due to a change in the law that the instant suit is actionable.

Plaintiffs have also clearly satisfied the diligence prong of the equitable tolling analysis. Ever since their first building permit was denied, plaintiffs have pursued relief by every available avenue, creating a lengthy record of state court proceedings.  Plaintiffs commenced the present lawsuit less than four months after *Knick* was decided, suggesting that they were attentive to potentially relevant to changes in the law.  This case presents a similar factual backdrop to *Stensrud*, where the court found that the plaintiffs had met the diligence prong by "actively litigating" in state court and filing their federal lawsuit approximately three months after the

5

*Knick* decision. 507 F. Supp. 3d at 453. Because plaintiffs have satisfied the conditions for equitable tolling, the Court finds that their takings claim is not time-barred.

*Plaintiffs' Request for Discovery*

Having determined that plaintiffs' claim is not moot or time-barred, the Court would ordinarily proceed to the merits of their takings claim. However, plaintiffs did not have an opportunity to conduct any discovery in this case until late 2023 and have requested to defer resolution of defendants' summary judgment motion pursuant to Fed. R. Civ. P. 56(d). *See* DE 94. "[W]hen a party facing an adversary's motion for summary judgment reasonably advises the court that it needs discovery to be able to present facts needed to defend the motion, the court should defer decision of the motion until the party has had the opportunity to take discovery and rebut the motion." *Com. Cleaning Servs., L.L.C. v. Colin Serv. Sys., Inc.*, 271 F.3d 374, 386 (2d Cir. 2001). The Second Circuit has stated that a party seeking additional discovery under Rule 56(d) must file an affidavit describing: "(1) what facts are sought and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts." *Meloff v. New York Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir. 1995). "Only in the rarest of cases may summary judgment be granted against a plaintiff who has not been afforded the opportunity to conduct discovery." *Elliott v. Cartagena*, 84 F.4th 481, 493 (2d Cir. 2023) (quoting *Hellstrom v. U.S. Dep't of Veterans Affs.*, 201 F.3d 94, 97 (2d Cir. 2000)).

To satisfy the first requirement of the *Meloff* test, the nonmovant must identify the information sought with some particularity. *See id.* at 493–94 (granting Rule 56(d) request because "[t]he declaration outlines eighteen categories of discovery and topics to be pursued and describes what tools [plaintiff] would use to pursue them. It also indicates the relevance of each

category and the likelihood that the evidence to be obtained would give rise to a genuine dispute of material fact."). By contrast, a district court will refuse to allow additional discovery "if it deems the request to be based on speculation as to what potentially could be discovered," *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1138 (2d Cir. 1994), particularly if the request contains "bare, generalized assertions" and "fail[s] to explain with any specificity how the facts sought are reasonably expected to create a genuine issue of material fact." *Alphonse Hotel Corp. v. Tran*, 828 F.3d 146, 151–52 (2d Cir. 2016) (internal quotations omitted).

Here, plaintiffs have made a Rule 56(d) request in an affidavit filed alongside their motion papers. *See generally* DE 94. The affidavit states that plaintiffs seek information in three specific categories: "(1) Village Attorney Ritter and Building Inspector Siino's files; (ii) communications between Ritter and other Village Officials concerning Plaintiffs' dock applications; and (iii) correspondence between Ritter and Siino concerning Plaintiffs' dock applications." DE 94 ¶ 26. The affidavit further explains that plaintiffs will use document requests, interrogatories, and a deposition of James Siino to acquire this information. *See id.* ¶ 33. Like in *Elliott*, plaintiffs have sufficiently explained the "topics to be pursued" and "the tools [plaintiffs] would use to pursue them" to satisfy their burden under the first *Meloff* requirement. 84 F.4th at 493–94. However, plaintiffs also request "interrogatories and depositions of other defendants from the Village and the Board [that] will uncover the necessary information." DE 94 ¶ 35. Without any clarity about what the "necessary information" is, or how obtaining it would create an issue of material fact, the Court rejects plaintiffs' Rule 56(d) generalized request as to these depositions and interrogatories.

The second *Meloff* requirement turns on whether the alleged facts, if discovered, would create an issue of fact that would preclude summary judgment, which requires a brief analysis of

7

plaintiffs' claim.  Plaintiffs allege a regulatory taking, which occurs when "the state regulation goes too far and in essence effects a taking." *Buffalo Tchrs. Fed'n v. Tobe*, 464 F.3d 362, 374 (2d Cir. 2006).  "Anything less than a complete elimination of value, or a total loss, is a non-categorical taking, which is analyzed under the framework created in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978)." *Yu v. Inc. Vill. of Oyster Bay Cove*, 579 F. Supp. 3d 391, 399 (E.D.N.Y. 2022).  The well-known *Penn Central* factors are (1) "the economic impact of the regulation," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action." *Penn Cent. Transp. Co.*, 438 U.S. at 124.

The exact meaning of the "character" factor is ambiguous, but courts often consider the government's motivation in enacting the regulation, with actions taken in bad faith viewed as more likely to possess the "character" of a taking.  *See Sherman v. Town of Chester*, 752 F.3d 554, 565 (2d Cir. 2014).  In *Sherman*, the Second Circuit found that the plaintiff had stated a valid takings claim against a town that allegedly manipulated its zoning code to prevent the plaintiff from constructing a residential development.  *Id.*  In finding that the "character" factor weighed in favor of finding a taking, the court noted that "the Town singled out [plaintiff's] development, suffocating him with red tape to make sure he could never succeed in developing [his property].  The Town's alleged conduct was unfair, unreasonable, and in bad faith." *Id.* at 565–66.

Here, plaintiffs allege that defendants were acting with a similar degree of bad faith by purporting to rely on an invalidated easement to deny plaintiffs' building permit.  The affidavit suggests that documents prepared by John Ritter and James Siino, as well as a deposition of Siino, may elucidate defendants' intent.  DE 94 ¶ 33.  If evidence of bad faith is produced, it

8

could weigh significantly on the third *Penn Central* factor and support a conclusion that defendants committed a regulatory taking. Although a finding of bad faith, by itself, is generally not sufficient to establish a taking, the Court agrees that discovery on this issue could create an issue of material fact that would preclude summary judgment, satisfying plaintiffs' burden under the second *Meloff* requirement.

The remaining *Meloff* requirements are clearly met. This case was subject to a stay of discovery until several months ago; since the stay was lifted, the parties have engaged in limited discovery but have been unable to agree on the appropriate scope, leading to the Rule 56(d) request. *See id.* ¶ 24. The stay—and the parties' subsequent dispute—prevented plaintiffs from obtaining the desired information despite several requests. Therefore, plaintiffs have satisfied the third and fourth *Meloff* requirements, and plaintiffs' request for additional discovery pursuant to Rule 56(d) is granted as to the three types of information identified in paragraph 26 of their affidavit. *See* DE 94 ¶ 26. Plaintiffs may pursue this information by document requests, interrogatories, and a deposition of James Siino. Any reapplications for further discovery after review of the information received are respectfully referred to Magistrate Judge Dunst.[1]

**Conclusion**

For the foregoing reasons, defendants' motion for summary judgment is DENIED WITHOUT PREJUDICE and the parties are directed to proceed with discovery expeditiously in accordance with this order.

---

[1] Defendants assert that some or all of the documents requested by plaintiffs are privileged. *See* DE 98 ¶ 4-6. Applications regarding any claim of privilege are also referred to Magistrate Judge Dunst.

9

**SO ORDERED.**

Dated: Central Islip, New York
      March 1, 2024

                                                 **/s/ Gary R. Brown**
                                                 GARY R. BROWN
                                                 United States District Judge